IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Howard McDougall, a Trustee thereof, in his representative capacity,<br><br>                Plaintiff,<br><br>    v.<br><br>HEALTH SPECIAL RISK, INC., MARKEL INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, and ACE AMERICAN INSURANCE COMPANY,<br><br>              Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  Case No.  3-11-cv-2910<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION TO DISMISS COMPLAINT

                          ALICIA G. CURRAN
                          Cozen O'Connor
                          State Bar Number 12587500
                          1717 Main Street, Suite 3400
                          Dallas, Texas 75201-7335
                          Telephone:  (214) 462-3021
                          Facsimile:  (214) 462-3299
                          acurran@cozen.com

                          Attorney for Defendants Health Special Risk, Inc., Markel Insurance Company, Federal Insurance Company and ACE American Insurance Company

Of Counsel:
Raymond A. Kresge
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
Direct:  (215) 665.2128
Facsimile:  (215) 701.2434
Toll free:  (800) 523.2900
rkresge@cozen.com
*Admission Per Pro Hac Vice* To Be Filed

TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 1

II. COMPLAINT ALLEGATIONS ........................................................................... 2

III. ARGUMENT.......................................................................................................... 4

    This Complaint Should Be Dismissed Because It Does Not Present A Claim Upon Which Relief May Be Granted Under ERISA................................................................................. 4

IV. CONCLUSION...................................................................................................... 9

TABLE OF AUTHORITIES

Page(s)

**CASES**

Amshcwand v. Spherion Corp.,
  505 F.3d 342 (5th Cir. 2007) ...............................................................................................6, 7

Great-West Life & Annuity Insurance Co. v. Knudson,
  534 U.S. 204 (2002)......................................................................................................... passim

Pan-American Life Insurance Co. v. Bergeron,
  82 Fed. Appx. 388 (5th Cir. 2003)..............................................................................................6

I.  INTRODUCTION

In this case, Defendants Markel Insurance Company ("Markel"), ACE American Insurance Company ("ACE"), and Federal Insurance Company ("Federal") (collectively Markel, ACE, and Federal are referred to herein as the "Insurer Defendants") provided accident-only excess insurance policies to various institutions and organizations, such as school districts and the Boy Scouts of America.  These accident-only policies were priced and sold as excess policies and were understood by the parties to these insurance policies to provide excess coverage, only.  Defendant Health Special Risk, Inc. ("Defendant HSR") is the third party administrator for each of the Insurer Defendants and as such administered the claims handling under the respective accident-only excess policies.  Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Plaintiff" or "Fund") was not mentioned in any of these excess policies and has no agreement or contract with any Defendant.

According to the Complaint, the Fund, which is a large Teamsters Union fund providing health and welfare benefits to Teamsters members, has participants whose family members (most often, children) were allegedly injured while at school or on a Boy Scouts trip, etc., and for whom medical coverage and benefits were provided by the Fund.  Now, the Fund, having become aware of the accident-only excess policies, has sued Defendants for the money paid by the Fund for those medical treatments/benefits.  The Fund has sued under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

While the Fund (which is an ERISA plan) has presented three counts in its Complaint, the Fund's claim in each count is the same demand for money equal to the sums that the Fund paid for medical treatment.  The Fund labels its Count II as a claim for restitution under Section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3) and labels its Count III as a claim for an equitable lien/constructive trust under Section 502(a)(3) of ERISA.  In Count I, the Fund re-casts its

ERISA claim as a declaratory judgment claim. Although characterizing its requested relief in part as "injunctive" in Count I, the Fund in actuality is seeking an order that Defendants are obligated to pay the Fund the money for the medical expenses that the Fund has paid for its participants and family members.

Defendants now move to dismiss the Complaint. Defendants' motion is based on Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002). Under Great-West, the Fund cannot recover monetary relief under ERISA Section 502(a)(3). While the Fund attempts to plead around Great-West by labeling its claims under equitable theories of restitution and "equitable lien/constructive trust," or as a declaratory judgment action for injunctive relief, the relief sought in each Count is monetary under Great-West, and therefore the Complaint should be dismissed.

For any and all of the reasons presented herein, the Court should grant Defendants' motion and dismiss the Complaint with prejudice.

II.     COMPLAINT ALLEGATIONS[1]

The Fund is an ERISA-regulated employee welfare benefit plan. (Complaint ¶¶ 1-2). The Fund provides health and welfare benefits, including medical and hospital benefit payments, to Teamster members and their dependents (defined in the Complaint as "Covered Individuals"), pursuant to the terms of its Plan document. (Complaint ¶4 and at Exh. A). The Insurer Defendants are insurance companies providing accidental injury insurance to various

---

[1] The allegations of the Complaint are assumed to be true for purposes of this Motion only. If this Motion is not granted, Defendants preserve the right to present all defenses to the Complaint including (but not limited to) defenses pertaining to jurisdiction and standing and defenses based on the grounds that the insurance policies at issue here are excess policies that cannot be controlled by the coordination of benefits provisions in the plan documents for the Fund. The net practical effect of this lawsuit, if it were ever to be successful, would be to end the provision of accidental injury excess insurance.

2

organizations and institutions, such as school districts and the Boy Scouts of America. (Complaint ¶¶ 6-8 and Exh. B-L). Defendant HSR served as a third party claims administrator for the Insurer Defendants. (Complaint ¶¶ 5, 9).

All of the insurance policies at issue in the Complaint are accidental injury excess policies. (See, e.g., Complaint at Exh. C, H, L). For example, Defendant Markel issued an accident excess policy to Pi Kappa Phi fraternity that had a heading in bold of **"EXCESS INSURANCE"** and that stated that "[t]his policy is not intended to be issued when other medical insurance exists. If other medical insurance does exist at the time of the claim then the amounts of benefit payable by such other medical insurance will become the deductible amount of this policy." (Complaint at Exh. C). As another example, Defendant ACE issued an accident excess policy to the Boy Scouts of America Council in Florida that presented the "Excess Benefit Provision" as one in which after the first $300, ACE would pay expenses "only when they are in excess of any amounts payable by any other Health Care Plan." (Complaint at Exh. H). As another example, Defendant Federal issued an accident excess policy to Pony Baseball/Softball, Inc. in which the contract has a heading in bold of **"Excess Accident Medical Expense"** in which it is stated that "[t]he Benefit Amount for Excess Accident Medical Expense is payable on an excess basis." (Complaint at Exh. L).

The Fund alleges that each of the eleven Covered Individuals specifically identified in the Complaint were injured, resulting in the payment of medical expenses by the Fund. (Complaint ¶¶ 25-33). For example, one covered dependent (son) of a Teamster participant was hurt playing softball while a member of Pi Kappa Phi fraternity, resulting in $3,565.46 in medical expenses paid by the Fund. (Complaint ¶ 26). In this Complaint, the Fund demands that Defendants pay it the monies that the Fund has paid out for the medical expenses of the eleven Covered Individuals. (Complaint ¶¶ 42, 47, 52). The Fund cites the coordination of benefits ("COB")

provision in its own Plan as support for its claims. (Complaint ¶¶ 21-22 and Exh. A). The Fund does not contend in its Complaint that it has any contract or agreement with any Insurer Defendant (or Defendant HSR) and does not cite to any provision in any Insurer Defendant's excess policy as support for its claims for reimbursement.

The Fund presents its Complaint as "an action under Title I of ERISA" with Count I under "federal common law" and Counts II and III under Section 502(a)(3) of ERISA. (Complaint ¶¶ 16-19). In Count I entitled "Declaratory Judgment," the Fund requests the Court to require "Defendants *pay* covered medical expenses of the eleven Covered Individuals." (Complaint ¶ 42) (emphasis added). In Count II entitled "Restitution of Payments Made," the Fund characterizes its demand as "an order of equitable relief" in the form of restitution of the medical expenses paid by the Fund that "Defendants have failed and refused to *pay*" and demands relief in "the sum of $66,414.59" from Defendant Markel; "the sum of $2,973.95" from Defendant Federal; and "the sum of $12,662.11" from Defendant ACE. (Complaint ¶¶ 44, 47 and demand for relief) (emphasis added). In Count III entitled "Equitable Lien/Constructive Trust," the Fund alleges that "Defendants have failed and refused to *pay*" medical expenses paid by the Fund and that Defendants are obligated to pay the Fund in the amount of $66,414.59 from Markel; $2,973.95 from Federal; and $12,662.11 from ACE. (Complaint ¶¶ 50-52) (emphasis added).

III.  ARGUMENT

    This Complaint Should Be Dismissed Because It Does Not Present
    A Claim Upon Which Relief May Be Granted Under ERISA.

The civil enforcement scheme under ERISA is presented in Section 502, 29 U.S.C. § 1132. As the Supreme Court has stressed, "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Great-West Life & Annuity Insurance

4

Co. v. Knudson, 534 U.S. 204, 209 (2002) (emphasis in original) (quotation marks and citation omitted).  In this case, the Fund proceeds under ERISA Section 502(a)(3) which states:

> A civil action may be brought by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan or (B) to obtain other appropriate *equitable* relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added).

In Great-West, the Supreme Court interpreted the ERISA Section 502(a)(3) limitation to "equitable" relief and held that money damages constitute legal relief that is unavailable under Section 502(a)(3), 29 U.S.C. §1132(a)(3).  The Court stressed that the term "equitable relief" in Section 502(a)(3) "must mean *something* less than *all* relief . . . and must refer to those categories of relief that were *typically* available in equity."  Id. at 209 (quotation marks and citations omitted) (emphasis in original).  Under an analytical framework that is rooted in the historical differences between equitable relief and legal relief, the Supreme Court stated that money damages generally constitute legal relief:

> Almost invariably … suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff, are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty.  And money damages are, of course, the classic form of *legal* relief.

Id. at 210 (quotation marks and citations omitted) (emphasis in original).

In Great-West, the plaintiff was an insurance company that had paid nearly $350,000 of a health plan participant's medical expenses incurred as a result of injuries suffered in a car accident.  When the plan participant negotiated a $650,000 settlement from alleged tortfeasors in a separate lawsuit, the insurance company sought reimbursement from the participant based on the reimbursement provision of the plan.  The insurance company sued the participant for the

5

reimbursement under Section 502(a)(3). Since the Great-West plaintiff was attempting to impose "liability upon the defendant to pay a sum of money," the Court held that the lawsuit was "not authorized by Section 502(a)(3)." Id. at 213, 218. In so holding, the Court in Great-West recognized that the plaintiff might be left without a remedy. The Court, however, refused to alter its statutory interpretation in light of this result, stressing that "vague notions of a statute's basic purpose are nonetheless inadequate to overcome the words of its text regarding the *specific* issue under consideration." Id. at 220 (quotation marks and citations omitted) (emphasis in original).

In Great-West, the Court rejected attempts to re-cast the claims as equitable. The plaintiff contended that its claim for "injunctive and declaratory relief" was equitable so as to fit under the Section 502(a)(3) language of an action "to enjoin an act or practice" and alternatively that its claim was one for "restitution" that was available in equity. The Court held that "an injunction to compel the payment of money" was a legal claim for money and "was not typically available in equity." Id. at 210-211 (footnote and citations omitted). Otherwise, as the Court noted, "a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyer inventiveness, be phrased in terms of an injunction." Id. at 211 n.1; see also, Amshcwand v. Spherion Corp., 505 F.3d 342, 348 n.7 (5th Cir. 2007) ("attempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected").

In not allowing the "restitution" theory to fit as an ERISA Section 502(a)(3) claim, the Supreme Court stressed that "not all relief falling under the rubric of restitution is available in equity." 534 U.S. at 212. Rather, restitution as an equity claim involves "a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could *clearly be traced to particular funds or property* in the defendant's possession." Id. at 213 (emphasis added); see also, Pan-American Life Insurance Co. v. Bergeron, 82 Fed.

6

Appx. 388, 391-392 (5th Cir. 2003) (no viable Section 502(a)(3) claim because there were no specifically identifiable and traceable funds possessed by the defendant).  If a plaintiff can "*not* assert title or right to possession of particular property [but rather can] show just grounds for recovering money to pay for some benefit the defendant had received from him," the claim is one for "restitution *at law*."  Great-West, 534 U.S. at 213 (emphasis in original).  The Court in Great-West held that the plaintiff had no viable Section 502(a)(3) claim because the relief sought was "not equitable -- the imposition of a constructive trust or equitable lien on *particular property* -- but legal -- the imposition of personal liability for the benefits that they conferred upon respondents."  Id. at 214 (emphasis added).

The ERISA Complaint in this case tracks all of the *losing* Great-West arguments for characterization of relief as equitable -- namely a claim for declaratory/injunctive relief (Count I), restitution (Count II), and constructive trust/equitable lien (Count III).  Under Great-West, the Complaint fails to state a claim upon which relief may be granted, as the relief sought in each Count is legal relief for the payment of sums of *money*, which relief is not available.  First, the Count I claim for declaratory judgment/injunctive relief is a claim for legal relief in the form of an order requiring Defendants to "pay covered medical expenses of the eleven Covered Individuals" (Complaint ¶42), i.e., an injunction to compel the payment of money that was not allowed in Great-West.  In accord with the Fifth Circuit's statement that attempts to recharacterize demands for payment as injunctions have been consistently rejected, Amschwand, 505 F.3d at 348 n. 7, the Count I characterization of a claim/remedy as declaratory/injunctive in an attempt to avoid Great-West should be rejected.[2]

---

[2] The Fund cannot invoke "federal common law" under Count I in an attempt to avoid the Section 502(a)(3) limitation to equitable relief.  "ERISA is a comprehensive and reticulated statute", and as such, the Federal Courts must be "especially reluctant to tamper with [the]
*Continued…*

7

Second, the Count II claim for restitution is not a claim for restitution in equity. The Fund has not alleged (nor can it allege) that it is seeking recovery of money or property to which it held title that can now be clearly traced to particular funds or property in the possession of any Defendant. As is clear from the Complaint, no Defendant received any money or property from the Fund, and no Defendant received the specific sums of money that are at issue in this Complaint. Since restitution in equity involves an action "to *restore* to the plaintiff *particular* funds or property in the defendant's possession," Great-West, 534 U.S. at 213 (emphasis added), the Fund has not pled a claim for restitution in equity that could be viable under ERISA Section 502(a)(3). At most, the Fund has alleged a restitution at law claim by presenting what it believes to be "just grounds for recovering money" (i.e., under its COB provisions) from Defendants. Great-West, 534 U.S. at 213. Such a claim is not available under ERISA Section 502(a)(3).

Third, and in a related vein, the Count III claim does not on its face present a claim for constructive trust/equitable lien. As the Supreme Court stated in Great-West, a constructive trust or an equitable lien are the forms of "restitution in equity" (i.e., Counts II and III are the same claim) and as such, must involve money or property that belonged to the plaintiff and that can now be clearly traced to particular funds or property of the defendant so that a court "could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner." Id. Again, as is clear from the Complaint, there are no specifically identifiable and traceable funds or property originally belonging to the Fund and now in the possession of Defendants over which a constructive trust or an equitable lien could be imposed. Rather, the

---

enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." Great-West, 534 U.S. at 209 (citations omitted). Therefore, the Fund must plead under Section 502(a)(3) (as is done in Counts II and III), even if Section 502(a)(3) leaves the Fund without relief.

Fund is just demanding money from Defendants to cover medical expenses that the Fund paid for its participants. This is a classic suit for money damages/legal relief that is not available under ERISA Section 502(a)(3).

In sum, Great-West compels the dismissal of this Complaint that does not present a claim for relief under ERISA.

IV.   CONCLUSION

For any and all of the reasons presented herein, the Court should grant this Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

/s/  Alicia G. Curran
ALICIA G. CURRAN
State Bar Number 12587500
Cozen O'Connor
1717 Main Street
Suite 3400
Dallas, Texas 75201
Direct:  (214) 462-3021
Facsimile:  (214) 462-3299
acurran@cozen.com

Attorneys for Defendants Health Special Risk, Inc., Markel Insurance Company, Federal Insurance Company and ACE American Insurance Company

Of Counsel:
Raymond A. Kresge
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103-3508
Direct:  (215) 665.2128
Facsimile:  (215) 701.2434
Toll free:  (800) 523.2900
rkresge@cozen.com
*Admission Per Pro Hac Vice* To Be Filed

9

CERTIFICATE OF SERVICE

I hereby certify that on this 17th of January 2012, I caused to be served a true and correct copy of Defendants' Motion to Dismiss Complaint and Supporting Memorandum of Law by ECF upon Plaintiff's counsel:

> Roger Albright, Esq.
> Law Offices of Roger Albright
> 3301 Elm Street
> Dallas, Texas 75226-2562
> 214-939-9222
> ralaw@rogeralbright.com
>
> Francis J. Carey
> Of Counsel for
> Central States, Southeast and Southwest
> Areas Health and Welfare Fund
> 9377 W. Higgins Road
> Rosemont, IL 60018-4938
> 847-518-9800 Ext. 3465
> fcarey@centralstatesfunds.org

/s/  Alicia G. Curran
Alicia G. Curran

DALLAS\565554\1  315073.000