IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Howard McDougall, a Trustee thereof, in his representative capacity, | § § § § § § | |
| | § | Civil Action No. 3:11-CV-2910-D |
| Plaintiff, | § § § | |
| VS. | § § | |
| HEALTH SPECIAL RISK, INC., et al., | § § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by an ERISA[1]-regulated employee welfare benefit plan to recover relief in the form of a declaratory judgment, restitution, and an equitable lien and imposition of a constructive trust, the court must decide whether plaintiff is seeking monetary relief that is unavailable under § 502(a)(3) of ERISA. Concluding that plaintiff is seeking unavailable monetary relief, the court grants defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6), but it also allows plaintiff to replead.

I

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States") is an ERISA-regulated employee welfare benefit plan that provides health

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

and welfare benefits, including medical and hospital benefits, to participants in the Teamsters Union and their dependents.[2]  Three of the four defendants—Markel Insurance Company ("Markel"), Federal Insurance Company ("Federal"), and Ace American Insurance Company ("Ace") (collectively, the "Insurer Defendants")—are insurance companies that provided accident medical insurance to various institutions and organizations.

Central States alleges that, under the terms of its Health and Welfare Fund Plan Document ("Plan"), the Insurer Defendants were required to pay the medical expenses of eleven individuals ("Insureds") who were insured by both Central States and the Insurer Defendants for the accidental injuries they sustained.[3]  The Plan's coordination of benefits ("COB") provision states that, if another plan provides overlapping or duplicate coverage for an accidental injury, the other plan will be primarily responsible for paying the insured's medical claims.  Because the Insurer Defendants allegedly provided overlapping or duplicate coverage for the Insureds' accidental injuries, Central States argues that the Insurer Defendants were primarily liable for the Insureds' medical expenses.   The Insurer Defendants, however, refused to pay these medical expenses.  They argue that the policies they issued were accidental injury *excess* policies, which were allegedly understood by the

---

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the complaint in the light most favorable to Central States, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in its favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

[3]Six of the Insureds were insured as dependents under a Markel insurance policy, one was insured as a dependent under a Federal insurance policy, and four were insured as dependents under an Ace insurance policy.

parties to the policies to provide excess coverage only.  To avoid financial hardship to the Insureds, Central States paid their covered expenses and then sought reimbursement from the Insurer Defendants through defendant Health Special Risk, Inc. ("HSR"), a third party claims administrator for the Insurer Defendants.  HSR, however, denied Central States's demands for reimbursement.

Central States then filed the instant lawsuit, seeking a declaratory judgment that defendants[4] "had, and continue to have, . . . primary responsibility for paying all the covered medical expenses, which have been paid by Central States on behalf of the [Insureds], relating to accidental injuries incurred by the [Insureds], and to pay their future medical expenses, and that Central States['s] liability is to only pay as secondary[.]"  Compl. ¶ 42. It seeks an injunction prohibiting the Insurer Defendants and HSR, in its capacity as third party claims administrator, from violating the Plan's COB provisions.  Central States also seeks "an order of equitable relief requiring [defendants] to make restitution to Central States of an identifiable amount[5] consisting of the unreimbursed covered medical expenses Central States has overpaid on behalf of the [Insureds]."  *Id.* at ¶ 47.  Finally, Central States seeks an equitable lien and imposition of a constructive trust, pursuant to ERISA § 502(a)(3), 29

---

[4]The complaint seeks a declaration that "the Defendants" had primary responsibility for paying the covered medical expenses.  It is unclear whether Central States maintains that the Insurer Defendants *and* HSR had primary responsibility or whether they intend to seek this part of their declaratory judgment only against the Insurer Defendants.

[5]Central States seeks restitution in the amount of $66,414.59 plus interest against HSR and Markel; $2,973.95 plus interest against HSR and Federal; and $12,662.11 plus interest against HSR and Ace.

U.S.C. § 1132(a)(3), upon funds constructively held by defendants.[6]

Defendants move to dismiss under Rule 12(b)(6), arguing that under the Supreme

Court's decision in *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204

(2002), Central States cannot recover monetary relief under ERISA § 502(a)(3), 29 U.S.C.

§ 1132(a)(3). *Knudson*, 534 U.S. at 210.

## II

In deciding defendants' Rule 12(b)(6) motion, the court evaluates the sufficiency of

the complaint by "accept[ing] all well-pleaded facts as true, viewing them in the light most

favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir.

2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467

(5th Cir. 2004)) (internal quotation marks omitted). To survive defendants' motion, plaintiff

must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than

a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S.

at 555 ("Factual allegations must be enough to raise a right to relief above the speculative

---

[6]Central States seeks a constructive trust in the amount of $66,414.59 plus interest against HSR and Markel; $2,973.95 plus interest against HSR and Federal; and $12,662.11 plus interest against HSR and Ace.

level[.]”).  “[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not ‘shown’—‘that the pleader is entitled to relief.’”  *Iqbal*, 556 U.S. at 679 (alteration omitted) (quoting Rule 8(a)(2)).

III

A fiduciary can bring a civil action under § 502(a)(3) of ERISA “(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.”  29 U.S.C. § 1132(a)(3).  The Supreme Court has narrowly interpreted the term “other appropriate equitable relief” to include only “those categories of relief that were *typically* available in equity.”  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993) (emphasis in original); *see also Knudson*, 534 U.S. at 210.  Thus “if a plan or a plan’s fiduciary seeks to impose personal liability on a defendant for breach of contract, [the court] would not have jurisdiction under section 502(a)(3) because such relief was not typically available in equity.”  *ACS Recovery Servs., Inc. v. Griffin*, ___ F.3d ___, 2012 WL 1071216, at *2 (5th Cir. Apr. 2, 2012) (citing *Knudson*, 534 U.S. at 210).  “If, however, the plan or plan’s fiduciary seeks restitution in equity in the form of a constructive trust or equitable lien, the action would fall under section 502(a)(3) because the action would be classified as equitable.”  *Id.* (citing *Knudson*, 534 U.S. at 213).

The parties dispute whether the nature of this lawsuit is equitable or legal. Central

- 5 -

States seeks three different types of relief: a declaratory judgment, restitution, and an equitable lien and imposition of a constructive trust.  Defendants argue that, under the Supreme Court's decision in *Knudson*, Central States cannot recover monetary relief under ERISA § 502(a)(3).  They maintain that although Central States attempts to plead around *Knudson* by labeling its claims under equitable theories of restitution and "equitable lien/constructive trust," or as a declaratory judgment action for injunctive relief, the relief Central States seeks is monetary under *Knudson*, and the complaint must be dismissed.

Central States responds that, under *Sereboff v. Mid-Atlantic Medical Services, Inc.*, 547 U.S. 356 (2006), and the Fifth Circuit's decision in *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003), if an ERISA plan overpays benefits that it is not required to pay, it can seek equitable relief by a constructive trust in the amount of benefit overpayment to enforce the plan terms.  Central States argues that defendants hold funds that in equity and good conscience belong to Central States because the Insurer Defendants have not paid the medical expenses of the injured Insureds, which they should have paid.

IV

A

The court first addresses Central States's request for a declaratory judgment. Central States specifically seeks a

> declar[ation] that the COB provisions of Central States[']s Plan may and should be enforced against the Defendants, by requiring the Defendants pay covered medical expenses of the eleven Covered Individuals as primary and to fully reimburse Central States for payments already made by Central States on behalf of the eleven Covered Individuals for their covered medical expenses.

Compl. ¶ 42.  In *Knudson*, however, the Supreme Court rejected the plaintiffs' similar attempt to recast their claims as equitable, holding that "an injunction to compel the payment of money" was a legal claim for money and "was not typically available in equity." *Knudson*, 534 U.S. at 210-11.  Otherwise, the Court noted, "a statutory limitation to injunctive relief would be meaningless, since any claim for legal relief can, with lawyerly inventiveness, be phrased in terms of an injunction." *Id.* at 211 n.1; *see also Amschwand v. Spherion Corp.*, 505 F.3d 342, 348 n.7 (5th Cir. 2007) ("attempts to recharacterize a desired § 502(a)(3) remedy as a purely equitable form of relief, like an injunction, have been consistently rejected." (citing cases)).  Central States's request for declaratory judgment relief is essentially indistinguishable from a demand for payment and does not constitute the type of equitable relief § 502(a)(3) requires. *See Knudson*, 534 U.S. at 210-11; *Amschwand*, 505 F.2d at 348 n.7.

B

Central States's requests for restitution in the form of an equitable lien and imposition of a constructive trust likewise do not change the legal nature of its claims. In *Knudson*, *Sereboff*, and *Bombardier* the ERISA plans sought to recover medical benefits that the plans had paid after the beneficiaries received settlements from third-party tortfeasors. *See Knudson*, 534 U.S. at 207-08; *Sereboff*, 547 U.S. at 359-60; *Bombardier*, 354 F.3d at 350-51. In all three cases, the plans contained reimbursement provisions that required the plan beneficiaries to reimburse the plans for medical expenses recovered from third parties. *See Knudson*, 534 U.S. at 207; *Sereboff*, 547 U.S. at 359; *Bombardier*, 354 F.3d at 350. And in all three cases, whether the claims were characterized as legal or equitable depended on whether the "money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property *in the defendant's possession*." *Knudson*, 534 U.S. at 213-14 (emphasis added) (holding that relief sought was not equitable because the settlement funds had been paid into a special needs trust and thus were not in the possession of the plan beneficiaries); *Sereboff*, 547 U.S. at 362-63 (concluding that equitable lien had been created by agreement by plan terms, and, because the settlement funds had been placed in an investment account until the court resolved the coverage issues, the impediment to recovery in *Knudson* was not present); *Bombardier*, 354 F.3d at 356 (holding that plan beneficiaries had "constructive possession" of disputed funds where funds that Plan was seeking to recover belonged to participant and were simply being held in bank account

- 8 -

in name of participant's attorneys, who were indisputably the participant's agent ).  This is because "for restitution to lie in equity, the action must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession."  *Knudson*, 534 U.S. at 214.  Where the plan sought "in essence, to impose personal liability on respondents for a contractual obligation to pay money," this was "relief that was not typically available in equity."  *Id.* at 210.

In the instant case, Central States paid the Insureds' covered medical expenses directly to the Insureds' physicians, hospitals, or other providers.  Central States argues that because the Plan's COB provisions placed primary responsibility for providing benefits on the Insurer Defendants, the money Central States paid on behalf of the Insureds should have been paid by defendants.  But the funds Central States seeks to recover are not, as in *Knudson*, *Sereboff*, and *Bombardier*, funds that have been paid *to the defendants* that, in good conscience, belong to Central States.  Rather, the money at issue here has been paid by Central States to the third party health care providers.  As defendants point out, "no Defendant received any money or property from the Fund, and no Defendant received the specific sums of money that are at issue in th[e] Complaint."  Ds. Br. 8.  Central States's claims against defendants are essentially claims for money damages.  Central States is not trying to make a claim to a specific fund or to property that is in defendants' possession; instead, it is seeking to impose personal liability on defendants for their failure to honor the Plan's COB provisions.  It is clearly established that money damages constitute legal relief:

> Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff, are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of a legal duty.  And money damages are, of course, the classic form of *legal* relief.

*Knudson*, 534 U.S. at 210 (citations, brackets, and some quotation marks omitted; emphasis in original).

Because the nature of Central States's claims is legal, not equitable, Central States cannot recover under ERISA § 502(a)(3).  Accordingly, the court dismisses Central States's claims.[7]

V

Although the court is granting defendants' motion to dismiss, it will permit Central States to replead.  *See, e.g., In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552,

---

[7]Central States argues that, under *Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir. 1994), when an ERISA plan and a private insurance policy each contain conflicting COB clauses, and both the plan and policy cover an individual who incurs medical expenses as a result of an automobile accident, and both COB clauses are facially valid, since the ERISA plan's clause is bolstered by the preemptive effect of ERISA, the COB clause in the ERISA plan must be given full effect.  In *Thorn Apple Valley*, however, which is not binding on this court and which pre-dates the Supreme Court's decision in *Knudson*, the non-ERISA plan was the party that had paid the insured's benefits and sought to recover from the ERISA plan.  *Id.* at 372-73.  Because the court determined that the ERISA plan's COB provisions must be given full effect, and thus the non-ERISA plan was not entitled to reimbursement, it did not address whether an ERISA plan can recover non-equitable relief under § 502(a)(3).  *Id.* at 375.  *Winstead v. Indiana Insurance Co.*, 855 F.2d 430 (7th Cir. 1988), also does not affect this court's decision because it is not binding on this court, it pre-dates the Supreme Court's opinion in *Knudson*, and § 502(a)(3) is not discussed in the opinion.

567-68 (N.D. Tex. 2005) (Fitzwater, J.) (noting that district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing case, unless it is clear that defects are incurable or plaintiffs advise court that they are unwilling or unable to amend in a manner that will avoid dismissal).  Because there is no indication that Central States cannot, or is unwilling to, cure the defects that the court has identified, the court grants it 30 days from the date this memorandum opinion and order is filed to file an amended complaint.

*   *   *

For the foregoing reasons, the court grants defendants' motion to dismiss Central States's complaint.  Central States may file an amended complaint within 30 days of the date this memorandum opinion and order is filed.

**SO ORDERED.**

May 4, 2012.

SIDNEY A. FITZWATER
CHIEF JUDGE