IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

CENTRAL STATES, SOUTHEAST        §
AND SOUTHWEST AREAS HEALTH       §
AND WELFARE FUND, an Employee    §
Welfare Benefit Plan, by Howard  §      Civil Action No. 3:11-CV-2910-D
McDougall, a Trustee thereof,    §
in his representative capacity,  §
                                 §
                   Plaintiff,    §
                                 §
VS.                              §
                                 §
HEALTH SPECIAL RISK, INC., et al.,  §
                                 §
                  Defendants.    §

MEMORANDUM OPINION
AND ORDER

In this action by an ERISA[1]-regulated employee welfare benefit plan, the court must

again decide whether plaintiff is seeking relief that is unavailable under § 502(a)(3) of

ERISA, 29 U.S.C. § 1132(a)(3). Concluding that plaintiff is seeking relief that is unavailable

for all but its subrogation claim, the court grants in part and denies in part defendants' motion

to dismiss under Fed. R. Civ. P. 12(b)(6).

I

Because this case is the subject of a prior opinion, *Central States, Southeast &*

*Southwest Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 2012 WL 1570981

(N.D. Tex. May 4, 2012) (Fitzwater, C.J.) ("*Central States I*"), the court need not recount the

_____

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

background facts at length.  The court will instead state the background facts and procedural

history that are necessary to understand the present decision.

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund

("Central States") is an ERISA-regulated employee welfare benefit plan that provides health

and welfare benefits, including medical and hospital benefits, to participants in the Teamsters

Union and their dependents.[2]  *Cent. States I*, 2012 WL 1570981, at *1.  Three of the four

defendants—Markel Insurance Company, Federal Insurance Company, and Ace American

Insurance Company (collectively, the "Insurer Defendants")—are insurance companies that

provided accident medical insurance to various institutions and organizations.  *Id.*

Central States alleges that, under the terms of its Health and Welfare Fund Plan

Document ("Plan"), the Insurer Defendants were required to pay the medical expenses of 11

individuals ("Insureds") who were insured by both Central States and the Insurer Defendants

for accidental injuries.  *Id.*  When the Insurer Defendants refused to pay the medical expenses

of the Insureds, maintaining that the policies they had issued provided *excess* coverage only,

Central States paid the Insureds' covered expenses and then sought reimbursement from the

Insurer Defendants through defendant Health Special Risk, Inc. ("HSR"), a third-party claims

administrator for the Insurer Defendants.  HSR denied Central States's demands for

reimbursement.  *Id.*

---

[2]In deciding defendants' Rule 12(b)(6) motion, the court construes the amended complaint in the light most favorable to Central States, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in its favor.  *See, e.g.*, *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).

Central States then filed the instant lawsuit, seeking a declaratory judgment, an injunction prohibiting HSR and the Insurer Defendants from violating the Plan's choice of benefits ("COB") provisions, restitution, and an equitable lien and imposition of a constructive trust. *Id.* The court granted the Insurer Defendants' motion to dismiss all of Central States's claims. *Id.* at \*4. Under the authority of *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), the court held that Central States could not recover monetary relief under ERISA § 502(a)(3), and because Central States requested legal rather than equitable relief, Central States was not entitled to recover under § 502(a)(3). *Id.* at \*3-4. Although the court granted defendants' motion to dismiss, it permitted Central States to replead. *Id.* at \*4.

In its amended complaint, Central States adds the allegation that, for each Insured, it filed a notice of lien on HSR to assert a lien to the extent of benefits Central States paid or will pay for the Insured, "thereby establishing identifiable funds, measured by Central States's lien and thus traceable to the Defendants." Am. Compl. ¶ 48. Central States also asserts six claims. Count I (declaratory judgment) is largely identical to the declaratory judgment claim asserted in its complaint, except that Central States seeks a declaration that the Insurer Defendants are liable to pay the Insureds' "unpaid and future covered medical expenses." *Id*. ¶ 54. Counts II (declaratory judgment), III (seeking restitution of payments made), and IV (seeking an equitable lien and constructive trust) are nearly identical to the declaratory judgment, restitution, and equitable lien and constructive trust claims asserted in the complaint. Central States includes in the amended complaint a new subrogation claim,

by which it seeks to recover medical benefits that it paid for its insureds, "which they have a right to collect from the Defendants, under policies of insurance issued by the Defendants, providing coverage to them for accidental injuries," *id.* ¶ 74, and a new claim for unjust enrichment under federal common law.

Defendants again move to dismiss under Rule 12(b)(6), arguing as before that Central States has failed to state claims on which relief can be granted under ERISA.  The court applies the standards for deciding this motion that are set out in *Central States I.  See Cent. States I*, 2012 WL 1570981, at *2.

II

A

Defendants maintain that, because counts I-IV of the amended complaint are the same claims as alleged in the complaint, the court should dismiss counts I-IV of the amended complaint for the same reasons as stated in *Central States I*.  Central States responds that, because in count I it seeks a declaration only regarding unpaid and future bills, the court should follow the approach taken in *Auto Owners Insurance Co. v. Thorn Apple Valley, Inc.*, 31 F.3d 371 (6th Cir. 1994), and *Winstead v. Indiana Insurance Co.*, 855 F.2d 430 (7th Cir. 1988).  As to counts II, III, and IV, Central States contends that its new allegation that it filed notices of liens on HSR establishes that the Insurer Defendants are in possession of identifiable funds.  It maintains that defendants are "analogous to trustees" and have been unjustly enriched by their refusal to pay the Insureds' medical bills.  P. Br. 9.

- 4 -

B

The court addresses first defendants' motion to dismiss count I. In *Central States I* the court explained why the holdings of *Thorn Apple Valley* and *Winstead* do not inform the court's decision in this case. *See Cent. States I*, 2012 WL 1570981, at *4 n.7 The allegations of the amended complaint do not change the court's conclusion that these cases are inapposite.

To the extent Central States argues that, by limiting count I to a declaratory judgment action that seeks only "unpaid and future covered medical expenses," Am. Compl. ¶ 54, it has somehow converted its request for "'an injunction to compel the payment of money'" into an equitable claim, the court disagrees. *See Cent. States I*, 2012 WL 1570981, at *3 (quoting *Knudson*, 534 U.S. at 210). In *Knudson* the Court noted that "an injunction to compel the payment of money *past due* under a contract, or specific performance of a *past due* monetary obligation, was not typically available in equity." *Knudson*, 534 U.S. at 210-11 (emphasis added). As to requests for an injunction to compel specific performance, the Court stated that

> [t]hose rare cases in which a court of equity would decree specific performance of a contract to transfer funds were suits that, unlike the present case, sought to prevent future losses that either were incalculable or would be greater than the sum awarded. For example, specific performance might be available to enforce an agreement to lend money when the unavailability of alternative financing would leave the plaintiff with injuries that are difficult to value; or to enforce an obligor's duty to make future monthly payments, after the obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of bringing multiple

>         damages actions.  Typically, however, specific performance of
>         a contract to pay money was not available in equity.

*Id.* at 211 (internal quotation marks and citations omitted).  Central States does not allege that

it requires specific performance to prevent future losses that are either incalculable or would

be greater than the sum awarded.  *Id.*  Accordingly, as before, the court holds that "Central

States's request for declaratory judgment relief is essentially indistinguishable from a

demand for payment and does not constitute the type of equitable relief § 502(a)(3) requires."

*Cent. States I*, 2012 WL 1570981, at *3 (citing *Knudson*, 534 U.S. at 210-11; *Amschwand*

*v. Spherion Corp.*, 505 F.2d 342, 348 n.7 (5th Cir. 2007)).

C

The court next turns to Central States's arguments regarding counts II, III, and IV of

the amended complaint.  Central States has added the allegation that it filed notices of liens

on HSR to the extent of benefits it paid or will pay on behalf of the Insureds.  Citing *CIGNA*

*Corp. v. Amara*, ___ U.S. ___, 131 S. Ct. 1866 (2011), Central States argues that defendants

are "analogous to trustees" and that Central States is thus entitled to seek a monetary remedy

against defendants "based on their misconduct of refusing to pay bills they were required to

pay."  P. Br. 9.  Central States posits that, by refusing to make payments they were obligated

to pay, defendants "came into constructive possession of funds which belong to Central

States and which were established by Central States's Notices of Liens."  *Id*. at 11-12.

In *CIGNA* plan beneficiaries sued CIGNA when it changed the nature of its basic

pension plan to provide beneficiaries with less generous benefits and failed to provide

beneficiaries with proper notice of the changes. *CIGNA*, 131 S.Ct. at 1870. The Supreme Court held that because the case concerned a suit by a beneficiary "against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan (which ERISA typically treats as a trust)," it was the type of lawsuit that "before the merger of law and equity, [the beneficiaries] could have brought only in a court of equity, not a court of law." *Id.* at 1879. It accordingly held that various equitable remedies were available to the district court under § 502(a)(3), including ordering the plan administrator to pay to already-retired beneficiaries money owed to them under the plan as reformed by the court. *Id.* at 1880. The Court explained that

> the fact that this relief takes the form of a money payment does not remove it from the category of traditionally equitable relief. Equity courts possessed the power to provide relief in the form of monetary "compensation" for loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.

*Id.* (citation omitted).

Unlike the plaintiffs in *CIGNA*, who were plan beneficiaries suing their own plan, Central States has failed to plausibly allege a fiduciary relationship between itself and any of the defendants. The filing of notices of liens on HSR does not convert HSR or the Insurer Defendants into trustees such that HSR or the Insurer Defendants would have owed a fiduciary duty to Central States. The holding of *CIGNA* is therefore inapposite. Because Central States has alleged no other new facts relevant to counts II, III, or IV of the amended complaint, the court dismisses these counts.

III

The court next addresses count VI of the amended complaint, in which Central States asserts a claim for unjust enrichment.  In support of this claim, Central States again argues that the defendants are "trustees," and it urges the court to expand the statutory remedy to include unjust enrichment under the rationale of *CIGNA*.  P. Br. 18.  Apparently in the alternative, Central States requests that the court fashion a common law remedy to "fill the gap" in ERISA coverage "to address unjust enrichment by private insurance companies" and to prevent defendants from receiving a "windfall and escap[ing] any liability based upon their improper actions."  *Id.* at 19.

For the reasons explained above, *see supra* § II(C), Central States has not plausibly alleged that defendants are "trustees" such that a claim alleging unjust enrichment might be considered to seek an equitable remedy under the Supreme Court's holding in *CIGNA*, 131 S.Ct. at 1879.  Nor has Central States alleged a claim for equitable relief by seeking an "identifiable fund in the possession of the defendants . . . created by their refusal to pay the Insured's medical bills."  P. Br. 19.  As the court explained in *Central States I*,

> Central States paid the Insureds' covered medical expenses directly to the Insureds' physicians, hospitals, or other providers. Central States argues that because the Plan's COB provisions placed primary responsibility for providing benefits on the Insurer Defendants, the money Central States paid on behalf of the Insureds should have been paid by defendants.  But the funds Central States seeks to recover are not . . . funds that have been paid *to the defendants* that, in good conscience, belong to Central States.  Rather, the money at issue here has been paid by Central States to the third party health care providers.  As defendants point out, "no Defendant received any money or

> property from the Fund, and no Defendant received the specific
> sums of money that are at issue in th[e] Complaint." Ds. Br. 8.
> Central States's claims against defendants are essentially claims
> for money damages. Central States is not trying to make a claim
> to a specific fund or to property that is in defendants'
> possession; instead, it is seeking to impose personal liability on
> defendants for their failure to honor the Plan's COB provisions.

*Cent. States I*, 2012 WL 1570981, at \*4 (emphasis in original). For the reasons explained

in *Central States I*, Central States's claim for unjust enrichment is a legal claim for which

Central States cannot recover under ERISA § 502(a)(3). *Id.* at \*4.

Nor is this court permitted, under *Cooperative Benefit Administrators, Inc. v. Ogden*,

367 F.3d 323 (5th Cir. 2004), to fashion a common law remedy that would permit Central

States to recover on its unjust enrichment theory. In *Ogden* an ERISA plan sued its

beneficiary after she received a lump sum award of social security benefits but refused to

reimburse the plan for benefit "overpayments." *Id.* at 326. The plan sought equitable relief

under § 502(a)(3) and asserted a federal common law claim of unjust enrichment. *Id.* at 328.

In considering whether the plan could recover on its federal common law claim of unjust

enrichment, the *Ogden* court explained "that federal common law may be applied to fill

'minor gaps' in ERISA's text, as long as the federal common law rule created is 'compatible

with ERISA's policies.'" *Id.* at 329 (citations omitted). It noted, however, that "federal

courts do not have authority under ERISA to create federal common law when that statute

'specifically and clearly addresses the issue before the court.'" *Id.* at 330 (brackets and

citations omitted). As to the ERISA plan's attempt to recover on its unjust enrichment claim,

the court held:

> Congress, in drafting § 502(a)(3)(B) to allow only "equitable relief," specifically contemplated the possibility of extending to plan fiduciaries a right to sue a participant for money damages and chose instead to limit fiduciaries' remedies to those typically available in equity. As ERISA's text "specifically and clearly addresses" the issue whether . . . a plan fiduciary . . . has a right to pursue a claim for legal relief against [its beneficiary], there is no "gap" in ERISA on this question and thus no basis for granting [the fiduciary] a federal common law remedy.

*Id.* at 332.

Central States argues that *Ogden* should not bar its claim because "[i]f there is no statutory claim to allow a welfare benefit plan to address unjust enrichment by private insurance companies, then a common law claim is appropriate to fill the gap because, without the creation of the common law remedy, the Plan would be left with no remedy." P. Br. 19. This argument—that the court should permit Central States to recover on its claim pursuant to court-created "federal common law" because the statute and cases interpreting the statute expressly foreclose this type of relief—is unconvincing. As explained in *Ogden*, because ERISA specifically limits the remedies available to plan fiduciaries to equitable relief, there is simply "no 'gap' in ERISA on this question and thus no basis for granting [Central States] a federal common law remedy." *Ogden*, 367 F.3d at 332. Accordingly, the court grants defendants' motion to dismiss count VI of the amended complaint.

IV

Finally, the court addresses count V—Central States's claim for subrogation, in which it "asserts . . . the Insured[s'] rights against the Insurer Defendants based upon [the Insureds'] rights to coverage under insurance policies issued by the Insurer Defendants." P. Br. 15.

- 10 -

Central States argues that its subrogation rights "allow[] Central States to recover, in an identifiable amount, medical benefits[] Central States paid for its Covered Individuals, which they have a right to collect from the Defendants, under policies of insurance issued by the Defendants, providing coverage to them for accidental injuries."   Am. Compl. ¶ 74. Defendants move to dismiss this claim, arguing that Central States has not stated a claim for equitable relief because it has no equitable lien by agreement with any defendant and because no defendant is in possession and control of specifically identifiable funds belonging in good conscience to Central States.

ERISA § 503(a)(3) limits the relief available to a fiduciary seeking to enforce the terms of the plan.  *See* ERISA § 503(a)(3).  But an ERISA plan suing a third party as subrogee of its insureds is not similarly limited by § 503(a)(3), and, in its capacity as subrogee, may bring legal claims for damages against the third party.  This is because, as subrogee, the ERISA plan is not suing *as an ERISA plan fiduciary*, but instead is stepping into the shoes of its insureds.  *See, e.g.*, *Atteberry v. Memorial-Hermann Healthcare Sys.*, 405 F.3d 344, 349 (5th Cir. 2005) (in connection with payment of death benefits pursuant to ERISA plan, estate of decedent contractually subrogated its claim against third-party tortfeasor to ERISA plan such that ERISA plan was legally entitled to stand in the shoes of the estate and could prosecute and settle the estate's claims against third-party tortfeasor); *see also, e.g.*, *Reinhart Cos. Emp. Benefit Plan v. Vial*, 2011 WL 976505, at *3 n.4 (W.D. Mich. Mar. 17, 2011) (recognizing that ERISA plans could have pursued their subrogation rights in state court action by stepping into beneficiaries' shoes in their medical malpractice

claim against third party medical providers).  Thus an ERISA plan as subrogee is entitled to assert any claim against a third party that its insureds could have asserted.  Defendants' sole basis for moving to dismiss Central States's subrogation claim is that this claim does not seek equitable relief.  Because Central States is not limited to seeking equitable relief in asserting the claims of its Insureds as subrogee, defendants are not entitled to a dismissal of Central States's subrogation claim on this basis.

V

The court raises *sua sponte* the question whether it should exercise jurisdiction over this case now that the ERISA claims have been dismissed.

Although in its amended complaint Central States seems to allege that the court has federal question jurisdiction over the subrogation claim, *see* Am. Compl. ¶ 25, it appears to the court that this claim is governed by state subrogation law.  Central States does not plead diversity jurisdiction.  *See id.* ¶¶ 22-26.[3]  If the federal-question claims have been dismissed, the court in its discretion can decline to consider the state-law claim.  Under 28 U.S.C. § 1367(c)(3) the court can "decline to exercise supplemental jurisdiction . . . if— . . . the district court has dismissed all claims over which it has original jurisdiction[.]"  Accordingly, the court directs Central States to submit a letter brief that states its position regarding whether the remaining subrogation claim should be dismissed without prejudice to refiling

_____

[3]Of course, if the parties are diverse citizens, Central States can continue the case in this court (the court would likely require that it file an amended complaint establishing diversity of citizenship).

in state court.  The letter brief must be filed within 21 days of the date this memorandum

opinion and order is filed.  No response will be permitted unless the court invites a response

or grants a party's request to respond.

* * *

For the foregoing reasons, the court grants defendants' motion to dismiss counts I, II,

III, IV, and VI of the amended complaint, but it denies their motion to dismiss count V.  The

court therefore grants in part and denies in part defendants' June 28, 2012 motion to dismiss.

The court directs Central States to submit within 21 days a letter brief that states its position

regarding whether the remaining subrogation claim should be dismissed without prejudice

to refiling in state court.

**SO ORDERED.**

October 18, 2012.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE