IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE FUND, an Employee Welfare Benefit Plan, by Howard McDougall, a Trustee thereof, in his representative capacity, | § § § § § § § § | Civil Action No. 3:11-CV-2910-D |
| Plaintiff, | § § | |
| VS. | § § | |
| HEALTH SPECIAL RISK, INC., et al., | § § | |
| Defendants. | § | |

MEMORANDUM OPINION
AND ORDER

Defendants move the court to reconsider its decision holding that plaintiff, an ERISA[1]-regulated employee welfare benefit plan, has stated a subrogation claim against them. For the reasons that follow, the court grants the motion and dismisses this action with prejudice.

I

Because this case is the subject of two prior opinions, *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 2012 WL 1570981 (N.D. Tex. May 4, 2012) (Fitzwater, C.J.) ("*Central States I*"), and *Central States, Southeast & Southwest Areas Health & Welfare Fund v. Health Special Risk, Inc.*, 2012 WL 5006054

---

[1]Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*

(N.D. Tex. Oct. 18, 2012) (Fitzwater, C.J.) ("*Central States II*"), the court will recount only the background facts and procedural history necessary to understand the present decision.

Plaintiff Central States, Southeast and Southwest Areas Health and Welfare Fund ("Central States" or "the Central States plan") is an ERISA-regulated employee welfare benefit plan that provides health and welfare benefits, including medical and hospital benefits, to participants in the Teamsters Union and their dependents. *Cent. States II*, 2012 WL 5006054, at *1. Three of the four defendants—Markel Insurance Company, Federal Insurance Company, and Ace American Insurance Company (collectively, the "Insurer Defendants")—are insurance companies that provided accident medical insurance to various institutions and organizations. *Id.* Central States alleges that, under the terms of its Health and Welfare Fund Plan Document ("Plan Document"), the Insurer Defendants were required to pay the medical expenses of eleven individuals (the "Insureds") who were insured by both Central States and the Insurer Defendants for the accidental injuries they sustained. *Id.* The Plan Document's coordination of benefits ("COB") provision states that, if another plan provides overlapping or duplicate coverage for an accidental injury, the other plan will be primarily responsible for paying the Insureds' medical claims. *Cent. States I*, 2012 WL 1570981, at *1. Because the Insurer Defendants allegedly provided overlapping or duplicate coverage for the Insureds' accidental injuries, Central States maintains that the Insurer Defendants are primarily liable for the Insureds' medical expenses. *Id.* The Insurer Defendants have refused to pay these medical expenses. *Id.* They assert that the policies they issued are accidental injury excess policies that the parties allegedly understood

provided only excess coverage. *Id.*

To avoid financial hardship to the Insureds, Central States paid their covered expenses and then sought reimbursement from the Insurer Defendants through defendant Health Special Risk, Inc. ("HSR"), a third-party claims administrator for the Insurer Defendants. HSR denied Central States's demands for reimbursement. *Id.*

In *Central States I* the court addressed the Insurer Defendants' Fed. R. Civ. P. 12(b)(6) motion to dismiss and concluded that Central States could not recover under ERISA. With leave of court, Central States amended its complaint. It asserted, *inter alia*, a claim seeking to recover against the Insurer Defendants by "step[ping] into the shoes of its [Insureds] and . . . enforc[ing] their rights for coverage against the Defendants for payment of their medical expenses." Am. Compl. ¶ 73. The Insurer Defendants moved anew under Rule 12(b)(6) to dismiss the amended complaint for failure to state a claim.

In *Central States II* the court granted the Insurer Defendants' motion to dismiss except as to Central States's subrogation claim. *Cent. States II*, 2012 WL 5006054, at *1. The court held that "an ERISA plan suing a third party as subrogee of its insureds is not . . . limited by § 503(a)(3), and, in its capacity as subrogee, may bring legal claims for damages against the third party." *Id.* at *6. The Insurer Defendants now move the court under Rule 59(e)[2] to

_____

[2]Rule 59(e) does not apply to the court's interlocutory decision to deny, in part, the Insurer Defendants' Rule 12(b)(6) motion. Instead, Rule 54(b) governs whether the court should reconsiders its ruling. *See Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009) (Means, J.). The court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Colli v. S. Methodist Univ.*, 2011 WL 3524403, at *1 (N.D. Tex. Feb. 14,

reconsider this decision.

II

It is familiar jurisprudence that there are two types of ERISA preemption. *See Ellis v. Liberty Life Assur. Co. of Bos.*, 394 F.3d 262, 275 n.34 (5th Cir. 2004) (discussing ERISA conflict and complete preemption). Conflict (or ordinary) preemption occurs (1) when there is a direct conflict between the operation of federal and state law so that it is impossible to comply with both, or (2) when the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'" in the federal statute. *Boggs v. Boggs*, 520 U.S. 833, 844 (1997) (quoting *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992)); *see Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372-73 (2000). Complete preemption, on the other hand, "exists when a remedy falls within the scope of or is in direct conflict with [29 U.S.C. § 1132(a)], and therefore is within the jurisdiction of federal court." *Haynes v. Prudential Health Care*, 313 F.3d 330, 333 (5th Cir. 2002) (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 66 (1987)).

The Insurer Defendants contend that Central States's subrogation claim is preempted under ERISA § 514(a), 29 U.S.C. § 1144(a), because it would "relate to" an ERISA plan and

---

2011) (Solis, J.) (internal quotation marks omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). "Such a motion requires the court to determine 'whether reconsideration is necessary under the relevant circumstances.'" *Brown v. Wichita Cnty., Tex.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011) (O'Connor, J.) (quoting *Judicial Watch v. Dep't of the Army*, 446 F.Supp.2d 112, 123 (D.D.C. 2006)). The decision "whether to grant such a motion rests within the discretion of the court." *Colli*, 2011 WL 3524403, at *1 (citation omitted).

"would also be preempted because it would conflict with the ERISA § 502(a) [29 U.S.C. §

1132(a)] civil enforcement scheme and the limitations therein on available remedies." Ds.

Mot. Reconsider 4.

III

The court turns first to whether Central States's subrogation claim is subject to

conflict preemption under ERISA § 514(a).[3]

A

The court will begin by explaining the test used in this circuit to determine whether

a state-law claim is conflict-preempted under ERISA. It will then analyze Central States's

subrogation claim, determining initially whether a state-law subrogation claim brought by

the Insureds against the Insurer Defendants would be preempted, and then whether a state-

law subrogation claim brought by Central States against the Insurer Defendants is preempted.

---

[3]In *Great-West Life & Annuity Insurance Co. v. Knudson*, 534 U.S. 204, 220 (2002), the Supreme Court expressly left open the possibility that an ERISA plan might bring a state-law claim against a third party to recover funds allegedly due to the ERISA plan under its subrogation provision:

> We note, though it is not necessary to our decision, that there may have been other means for petitioners to obtain the essentially legal relief that they seek. We express no opinion as to whether petitioners could have intervened in the state-court tort action brought by respondents or whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would have been pre-empted by ERISA.

*Knudson*, 534 U.S. at 220.

B

ERISA preempts all state laws that "relate to" employee benefit plans.  29 U.S.C.

§ 1144(a).  A law "relates to" an employee benefit plan "if it has a connection with or

reference to such a plan."  *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983).  "The

Supreme Court has 'observed repeatedly that this broadly worded provision is clearly

expansive.'" *Access Mediquip L.L.C. v. UnitedHealthCare Ins. Co.*, 662 F.3d 376, 382 (5th

Cir. 2011) (quoting *Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141, 146 (2001)), *panel

opinion reinstated en banc*, 698 F.3d 229 (5th Cir. 2012) (per curiam).  Yet the term "relate

to" should not be "taken to extend to the furthest stretch of its indeterminacy."  *N.Y. State

Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655

(1995).  The court should not apply "uncritical literalism," but "must go beyond the

unhelpful text and the frustrating difficulty of defining its key term, and look instead to the

objectives of the ERISA statute as a guide to the scope of the state law that Congress

understood would survive."  *Id.* at 656.  To determine whether a state law relates to a plan

for purposes of ERISA preemption, the court asks "'(1) whether the state law claims address

areas of exclusive federal concern, such as the right to receive benefits under the terms of an

ERISA plan; and (2) whether the claims directly affect the relationship among the traditional

entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'"

*McAteer v. Silverleaf Resorts, Inc*., 514 F.3d 411, 417 (5th Cir. 2008) (quoting *Woods v. Tex.

Aggregates, L.L.C.*, 459 F.3d 600, 602 (5th Cir. 2006)).  "The Fifth Circuit recently

emphasized that whether ERISA preempts a state-law cause of action turns on whether it 'is

- 6 -

dependent on, and derived from[,] the rights of the plan beneficiaries to recover benefits under the terms of the plan.'" *Mem'l Hermann Hosp. Sys. v. UnitedHealthCare Ins. Co.*, 2012 WL 92563, at *3 (S.D. Tex. Jan. 11, 2012) (quoting *Access Mediquip*, 662 F.3d at 383).

C

The court holds that the Insureds could bring a state-law cause of action against the Insurer Defendants to recover non-ERISA benefits owed under their contracts with the Insurer Defendants. The action would not be preempted because, rather than suing as ERISA beneficiaries, the Insureds would be suing as parties to insurance contracts that are not governed by ERISA, to recover on those contracts from parties that are not ERISA entities.

The Insurer Defendants maintain, however, that such an action would be preempted because, to determine whether and in what amount the contracts require the Insurer Defendants to pay non-ERISA benefits to the Insureds, the court must construe the COB provision of the ERISA Plan Document.[4] Even assuming that a court addressing a state-law cause of action between the Insureds and the Insurer Defendants must interpret the ERISA Plan Document's COB provision to apportion responsibility for overlapping coverage, such a claim would not "relate to" the Central States plan. State causes of action are preempted when the existence of an ERISA plan constitutes an element of the cause of action. *See Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 140 (1990) (holding that conflict

____

[4]Neither side addresses whether the Insureds could bring suit against the Insurer Defendants, but the Insurer Defendants' argument that the court must reference and interpret the COB provision in the Plan Document would be equally applicable to a claim by the Insureds against the Insurer Defendants.

preemption applied where, "[i]n order to prevail [on state claim], a plaintiff must plead, and the court must find, that an ERISA plan exists"). They are also preempted when the ERISA plan is the subject of the action. *See, e.g., Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 48 (1987) (holding that ERISA preempted cause of action by ERISA participant or beneficiary alleging improper processing of claim for benefits). "[E]ven if [the cause of action] arises under a general law which in and of itself has no connection to employee benefit plans," a claim may be preempted. *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1218-19 (5th Cir. 1992) (addressing state-law fraud claim alleging that employer misrepresented benefits under plan to induce early retirement) (citation omitted). But in a suit by the Insureds, the existence of an ERISA plan would be unnecessary, and the plan would not be the subject of the litigation. The Plan Document, and the COB provision in particular, would be relevant only insofar as the amount of the Insurer Defendants' contractual liability depends on how the COB provision apportions responsibility for overlapping coverage. Put differently, the COB provision would be relevant only when determining how much in non-ERISA benefits the Insurer Defendants owed.

Nor would the mere need to refer to the Central States plan for purposes of calculating damages support preemption. *See E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 800 n.11 (5th Cir. 2008) ("We have rejected the argument that 'any lawsuit in which reference to a benefit plan is necessary to compute plaintiff's damages is preempted by ERISA[.]'" (quoting *Rozzell v. Sec. Servs., Inc.*, 38 F.3d 819, 822 (5th Cir. 1994))). It would go against the thrust of the claim to conclude that it was necessary to refer to the Plan

Document for more than the purpose of calculating damages.  When the Fifth Circuit derived

its test for conflict preemption, it cited only prior decisions in which plaintiffs pursued state

claims as a means of recovering plan benefits or complaining of improperly processed claims

for benefits.  *See Mem'l Hospital Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 245 (5th

Cir. 1990); *see also Hartle v. Packard Elec.*, 877 F.2d 354, 356 (5th Cir. 1989) (per curiam)

(holding claim was not preempted because plaintiff's suit "[was] not an action to recover

benefits under a plan" and did not "encompass the processing of claims for benefits under

a regulated plan") (citations omitted), *overruled on other grounds by Arana v. Ochsner

Health Plan*, 338 F.3d 433 (5th Cir. 2003) (en banc).  The goal of suits between the Insureds

and the Insurer Defendants would not be to recover plan benefits or to complain about plan

administration but to obtain non-ERISA contractual benefits; determining the amount of

benefits to be paid by the ERISA plan (as opposed to the contract) would not be the object

of the suit.  Accordingly, although it might be necessary for the court to analyze the Plan

Document (including the COB), the Insureds' claim would have "only a tenuous, remote, or

peripheral connection with" the Central States's plan.  *See Travelers*, 514 U.S. at 661.

Furthermore, the conclusion that an action by the Insureds against the Insurer

Defendants would be conflict preempted would thwart the purposes of ERISA's conflict

preemption provision.  Such a determination would entirely preclude the Insureds from

bringing an action to enforce their rights under non-ERISA insurance contracts.[5]  With no

---

[5]Even if the court assumed that the Insureds' action against the Insurer Defendants
was an ERISA claim, the Insurer Defendants would not be proper parties to a suit by a plan

available mechanism for plan beneficiaries to enforce non-ERISA contracts where there is overlapping ERISA plan coverage, an ERISA plan would have no incentive to pay plan benefits and then seek reimbursement from the beneficiaries who had recovered under contracts with non-ERISA third parties.  The Fifth Circuit has made clear in a different context that this result would contradict ERISA's goals.  *See Mem'l Hosp.*, 904 F.2d at 247-48 (noting that where "providers have no recourse under either ERISA or state law . . . , [they] will be understandably reluctant to accept the risk of non-payment, and may require up-front payment by beneficiaries—or impose other inconveniences—before treatment will be offered, [and t]his does not serve, but rather directly defeats, the purpose of Congress in enacting ERISA.").  The court therefore concludes that reference to the COB provision would not result in conflict preemption of the Insureds' action against the Insurer Defendants.

Because an action by the Insureds against the Insurer Defendants to recover under their contracts is not "dependent on, and derived from[,] the rights of the plan beneficiaries

---

beneficiary under § 502(a)(1)(B).  *See LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 844-45 (5th Cir. 2013) ("We agree that '[t]he proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan' and that '[i]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits.'" (quoting *Gomez–Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010)).  And an action seeking to recover money pursuant to the insurance contracts would be for legal relief, which is impermissible under § 502(a)(3).  *See Cent. States I*, 2012 WL 1570981, at *3 (holding that Central States's declaratory judgment claim against the Insurer Defendants was legal and not equitable because its demand for an injunction to pay funds was "essentially indistinguishable from a demand for payment") (citing *Knudson*, 534 U.S. at 210-11).

to recover benefits under the terms of [an ERISA] plan," and a contrary conclusion would work against ERISA's purposes, the court holds that the Insureds could bring a non-preempted suit under the contracts against the Insurer Defendants.

D

The court next considers whether, as it held in *Central States II*, Central States can bring a non-preempted state-law subrogation claim. On reconsideration, the court concludes that Central States cannot. For reasons to be explained, the court holds that a state-law subrogation claim would be conflict-preempted when brought by a plan or plan fiduciary via subrogation because the claim would be transformed into one that addresses an area of exclusive federal concern—the right to receive plan benefits—and would directly affect the relationship between the Central States plan and the Insureds.

The Fifth Circuit's decision in *Arana* guides this court in reaching this conclusion. *Arana* addressed whether ERISA completely preempted the state-law claim of a plan beneficiary seeking a declaratory judgment that he was not obligated to reimburse his ERISA plan from the proceeds of a tort-action settlement for health benefits paid by the plan. *Arana*, 338 F.3d at 434. The *en banc* Fifth Circuit analyzed whether the declaratory judgment action was a suit for benefits and therefore preempted under § 502(a)(1)(B), which states that "[a] civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan[.]" In holding that the action was completely preempted, the court stated:

> Arana's claim can fairly be characterized either as a claim "to recover benefits due to him under the terms of his plan" or as a claim "to enforce his rights under the terms of the plan." As it stands, [his] benefits are under something of a cloud, for [the plan] is asserting a right to be reimbursed for the benefits it has paid for his account. It could be said, then, that although the benefits have already been paid, [he] has not fully "recovered" them because he has not obtained the benefits free and clear of [the plan's] claims. Alternatively, one could say that [he] seeks to enforce his rights under the terms of the plan, for he seeks to determine his entitlement to retain the benefits based on the terms of the plan.

*Id.* at 438 (footnote omitted). This reasoning makes clear that, for the purpose of determining whether a suit is for benefits and therefore completely preempted, funds obtained from a settlement with a third-party tortfeasor cannot be strictly separated from benefits previously paid by the plan to the beneficiary.[6] *Arana* effectively rejected the contention that settlement funds in the beneficiary's possession were distinct from benefits previously paid by the plan, so that a suit to defeat a plan's reimbursement claim was not a suit for benefits or to enforce ERISA plan rights. Applied to the present case, *Arana*'s reasoning would support the conclusion that the Central States plan's claim for subrogation and reimbursement is in reality an action to recoup previously-paid ERISA plan benefits. *See id.* (stating that Arana sued to contest the plan's asserted right to be "reimbursed for the *benefits*" that the plan already paid) (emphasis added); *id.* at 435 (stating that the plan "claimed . . . reimbursement

---

[6]This distinction is critical for obtaining equitable relief under § 502 because relief is equitable only where the plan is seeking particular funds. *See ACS Recovery Servs., Inc. v. Griffin*, ___ F.3d ___, 2013 WL 1890258, at *3-4 (5th Cir. 2013) (en banc) (discussing *Knudson*, 534 U.S. at 213-14).

of benefits it paid for Arana's injuries to the extent that Arana was compensated by other

insurers."). Although *Arana* addressed complete, not conflict, preemption, its reasoning is

directly applicable to conflict preemption because it analyzed whether a suit to defeat an

obligation to reimburse previously-paid plan benefits was a suit for benefits, and the first

prong of conflict preemption is satisfied when the claim addresses the right to receive

benefits.[7]

Central States's subrogation claim therefore involves "the right to receive benefits

under the terms of an ERISA plan," which is an area of exclusive federal concern. *McAteer*,

514 F.3d at 417. Like the plan in *Arana*, Central States seeks reimbursement of plan benefits

previously paid. The subrogation clause in the Plan Document provides that "whenever

[Central States] makes any payment for any *benefits* on behalf of a [participant or

beneficiary] related to any [injury], [Central States] is immediately subrogated and vested

with subrogation rights . . . to all present and future rights of recovery . . . arising out of [that

injury.]" Plan Document at 58 (Emphasis added). This provision makes clear that these

subrogation rights arise only when Central States has paid plan benefits. The intent of the

---

[7]In holding that the plaintiffs' state-law cause of action was completely preempted, Arana implied that the state statute that Arana alleged prevented reimbursement related to an employee benefit plan and was preempted as a rule of decision unless ERISA's savings clause applied. *See Arana*, 338 F.3d at 439, 440 n.10. On remand to the panel, the panel did not address conflict preemption because it concluded that the state law in question would not have prevented reimbursement, even if not conflict preempted. *Arana v. Ochsner Health Plan*, 352 F.3d 973, 979 (5th Cir. 2003).

subrogation clause is to confer on Central States the right to recoup plan benefits.[8]  *Cf.*

*Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 397 (5th Cir. 2002) (noting that

ERISA plan's subrogation claim served two purposes: to reimburse payment of medical bills

and to prevent overcompensation).  And because Central States would be seeking via

subrogation to reimburse the plan with funds that the Insurer Defendants allegedly owed

under contracts with the Insureds, Central States would be seeking to recover benefits it had

already paid.  If Central States did not have this subrogation right, the Insureds would be able

to recover under their contracts with the Insurer Defendants and also retain the ERISA plan

benefits previously paid by Central States.

In reaching the conclusion that the instant subrogation claim would be conflict

preempted, the court does not suggest that, if the Insureds recovered from the Insurer

Defendants under their contracts, Central States would be precluded from enforcing the Plan

Document's subrogation clause and thereby recouping previously-paid plan benefits from

the Insureds.  *See, e.g., Bombardier Aerospace Emp. Welfare Benefits Plan v. Ferrer, Poirot,*

*& Wansbrough*, 354 F.3d 348, 355 (5th Cir. 2003) (allowing equitable suit to recover funds).

Nor does the court suggest that ERISA plans are powerless to require that beneficiaries assert

claims against third parties that would then enable the plans to recoup previously-paid

---

[8]Aside from analogies to *Arana*, the exclusive purpose requirement of 29 U.S.C. § 1103(c)(1) further demonstrates that Central States is seeking benefits. Section 1103(c)(1) provides that "the assets of a plan . . . shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

benefits (a question not presented or decided here).  The Central States subrogation claim

against the Insurer Defendants is conflict preempted, however, because Central States is

seeking to recoup benefits already paid.

IV

The court now considers whether Central States's subrogation claim is completely

preempted.[9]

Complete preemption applies under ERISA § 502(a), the statute's civil enforcement

provision.  Congress "designed [ERISA] to promote the interests of employees and their

beneficiaries in employee benefit plans."  *Shaw*, 463 U.S. at 90.  As part of its comprehensive

regulation of employee benefit plans, the statute contains "six carefully integrated civil

enforcement provisions."  *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 209 (2004) (internal

quotation marks omitted); *see also* 29 U.S.C. § 1132 (entitled "[c]ivil enforcement").  These

represent deliberate congressional policy choices that "would be completely undermined if

ERISA-plan participants and beneficiaries were free to obtain remedies under state law that

Congress rejected in ERISA."  *Davila*, 542 U.S. at 217 (citation and internal quotation marks

omitted).  Because of this clear intent to make ERISA's remedies exclusive, state-law causes

of action that duplicate, supplement, or supplant the remedies that § 502(a) provides are

displaced.  *Id*. at 209; *see also Haynes*, 313 F.3d at 333 ("In general, complete preemption

---

[9]Although the Insurer Defendants do not use the term "complete preemption," they clearly intend to argue that Central States's subrogation claim is preempted by both conflict and complete preemption.

exists when a remedy falls within the scope of or is in direct conflict with ERISA § 502(a), and therefore is within the jurisdiction of federal court." (citing *Taylor*, 481 U.S. at 66)).

Nevertheless, § 502(a) "'does not purport to reach every question relating to plans covered by ERISA.'" *Danca v. Private Health Care Sys., Inc.*, 185 F.3d 1, 5 (1st Cir. 1999) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 25 (1983)).  In *Davila* the Supreme Court explained that "if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B)." *Davila*, 542 U.S. at 210.

Central States cannot bring a subrogation claim against the Insurer Defendants under any provision of ERISA § 502(a).  Section 502(a)(3) permits claims by plan fiduciaries "(A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA]."   Assuming *arguendo* that Central States's subrogation claim is a suit to redress a violation, or to enforce a provision, of the Central States plan, Central States is not seeking specified funds from the Insurer Defendants, and therefore its claim is not equitable.  *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 208, 214 (2002).  Accordingly, the court concludes that ERISA does not completely preempt Central States's subrogation claim.

*   *   *

For the foregoing reasons, the court grants the Insurer Defendants' motion for reconsideration and concludes that Central States's subrogation claim is conflict preempted under ERISA. Because in *Central States II* the court dismissed all the counts in Central States's amended complaint except the count asserting a subrogation claim, and it is now dismissing the remaining count, this action is dismissed with prejudice by judgment filed today.

**SO ORDERED.**

June 13, 2013.

SIDNEY A. FITZWATER
CHIEF JUDGE